Case number 22-7136, 3534 East Cap Venture, LLC and McCullough Construction, LLC at Balance v. Westchester Fire Insurance Company and Endurance American Insurance Company. Mr. Brown for the Balance and Mr. Silverberg for the Appellees. Good morning, Your Honors, and I represent 3534 East Cap Venture. They were insured. They bought a policy of insurance from the defendants in this case. Actually, two policies are identical, each covering 50% of the coverage. They had express coverage for water damage. Water damage, when you look at the definition of flood and water damage together, water damage is defined as the accumulation of water from any source, not a covered source, any source on a roof or other surface of the building. In this case, there was a lack of a paper barrier that was installed. Water accumulated in the space between the roof and the walls and the ceilings in the building. That water soaked insulation. It soaked all the porous materials, drywall, wood, and that was the damage that was caused. There was no damage caused by dampness. That is humidity. Humidity dampness is something that could cause cupping of floors, that could cause, for example, the Sally case, the case Scottsdale v. Sally Group, it caused cigars to delaminate and become useless. That's not the kind of damage we had. Everybody agrees the damage here was from actual wetting. So, Mr. Brown, what is the covered peril that caused the loss that would have otherwise stemmed solely from the lack of a vapor barrier? Well, it was the accumulation of water. That is water damage is the actual peril that caused the actual wetting of porous materials in the building. Your Honor, were you... Condensate? Well, Your Honor, this policy doesn't have a condensation exclusion. Some policies do. But yes, this is water that you'd be able to condensate. You have actual water that forms and accumulates on the bottom of the roof deck is what it was. There are multiple references in the record, and I'll let you know where they are, that it was liquid water, actual water that formed within the bottom of the roof deck and the walls that caused the actual damage. No damage from humidity. And, Your Honor, under this policy... Condensation only occurs where there's humidity. Well, Your Honor, what we're doing is reading what the policy says. And if we look at the two exclusions that have been applied here, the judge, Judge Mehta, looked at two exclusions. One's the cost of making goods. It's a fascinating exclusion. And the other one is the dampness or dryness of atmosphere. It's kind of a mouthful. The first one, Your Honor, is the cost of making good, that is the cost of putting a vapor barrier in, are not covered. However, and that's directly out of the policy. However, if direct physical loss by an insured peril ensues, then this policy will provide coverage for such ensuing loss only. That ensuing loss is water. There's no question that the water resulted from the lack of a vapor barrier. And, Your Honor, we know that because when they put the vapor barrier in, no more water damage occurred. If direct physical loss from a covered peril ensues, how can we say it's direct where the reason that it built up was the lack of a vapor barrier? Well, Your Honor, if all we had was humidity or a lack of a vapor barrier and high humidity, we had no damage at all. None. The direct damage was the direct wetting of the porous materials. Now, Your Honor, a little bit on the procedural posture of this case. The only way it gets up under the roof is because there's humidity in the air, there's a cold, it condenses. That's correct, Your Honor. So we have a condensation, right? If we don't, if we have a vapor barrier, the condensation occurs on the outside of the vapor barrier. If we don't, it occurs on the inside of where the vapor barrier would be, which is inside the building. The actual damage is done by the water damage. And water damage, as Your Honor, I've told you, is defined as accumulation of water from any source. Excluded, non-exclude, doesn't matter. Insurance company could have said accumulation of water from a covered source, but they don't. It's any source. And Your Honor, the first cost of making good we just talked about, the second one was the policy does not ensure loss caused by any of the following unless direct physical loss by an insured peril ensues. And once again, the physical loss is the water damage, not the humidity. Water damage. And Your Honor, the case of Sousa versus Corvick is the one that talks about what does that mean? What does ensuing mean? District of Columbia follows a reasonable man standard, a man in the street standard. Would a reasonable man or a man in the street believe that I'm covered for water damage? I have water damage that resulted from a design defect, if you want to call it that, of a lack of a vapor barrier. That water damage ensued from, resulted from. And Your Honor, this court said expressly that the most common meaning of ensue is to result from. Your Honor, I went back and I pulled a couple of definitions out of ensuing from the Cambridge Dictionary. It's exactly that. It says to happen after something else, specifically as a result of. Miriam's was to take place afterward or as a result. And there's no question that the water damage resulted from something. And in this case, lack of a vapor barrier, the direct damage was done only by the actual wetting of these materials by a covered peril. How do we know it's a covered peril? Because the policy tells us it is. There's a $50,000 deductible for water damage. The opponents who are deposed for the insurance companies told us it was water damage. Mr. Morgan, Jeffrey Morgan, who was the deponent for Westchester was asked a question and said the damage wasn't caused by extreme temperature, which was one of the other excluded areas. It was caused by the water. And we know it was water damage. Richard Kielty, who was the SOMPO representative, said moisture damage to me means just the presence of heavy moisture in the air that causes damage per se. We didn't have that. He says water damage is from the actual liquid touching a surface. So, Your Honor, what we had was actual water damage. And just to let Your Honors know, this case came up for summary judgment before experts were identified. I guess we didn't have any expert testimony. And it was at a stage based on simply the language of the policy. There were no experts who said, look, humidity is what caused this problem. There were no experts who said the humidity in the building was X. The humidity outside was Y. Those were just not facts in this case on this record. Your Honor, what this means- Remand for further consideration and development of expert testimony? Well, Your Honor, I actually think that under this record, it's absolutely clear that we had water damage. I guess that's what I'm asking. Did the parties- and I looked into this, but I have a lot of different things in my brain today. I get it, Your Honor. Did the parties brief this up on summary judgment as a kind of- almost like a bifurcation where there may be further proceedings and you've reserved the right to have experts? Or did you just decide to forego? No, no, it was done expressly that way, Your Honor, in the scheduling order. We scheduled summary judgment argument before experts. And that's often done in these insurance cases because a lot of times, you know, the big money's in the experts. We want to try to get this resolved, if it can be resolved on the language of the policy. I think the language of this policy does cover water damage. We know it covers water damage. And the fact that that water damage resulted from a design defect or humidity doesn't matter. In fact, it's expressly covered as an ensuing loss. That's exactly what it means. A reasonable man would say, look, if it follows from, if it ensues from, it's clear. The Corbett case, Your Honor, the excluded element was settling of the building, settling of the house. Question was whether the damage to the broken windows and a heating element in the house were covered. What was covered was an ensuing loss if it was breakage of glass. And the court said, yeah, that's covered. The broken glass didn't result from a rock or anything else. It resulted from the settling of the house, or at least the court said that was the evidence that the plaintiff went. Now, Corbett came up on a directed verdict. Sort of standards are the same, but in our case, a little bit different, simply because in our case, Your Honor, we have a definition of water damage, which is very, very broad, written by the insurance companies, not us. Water, accumulation of water from any source, any source, not any covered source, not any covered peril, any source, is covered under this policy. Also interesting in this part of the court, District Court relied on this Bethany case. Yes, Your Honor. You have the causal dynamic in all of these cases seems to be, you have the excluded peril, in this case, is the humidity. It causes the covered peril, which is the water damage. And there's an ensuing loss clause. What happens then? So, Sousa seems helpful to you on that point. But Bethany, maybe not. The court there, on the one hand, it says, well, Maryland law, which is extra persuasive, DC law, just has this results from standard, same as Sousa. But then when they go on to apply it, they say the ensuing loss clause does not apply if the excluded peril and the ensuing covered peril are inextricably intertwined. And, Your Honor, What do you make of that? Well, I'll tell you what I make of it. Number one, it's a Maryland case. I was Judge Hollander. I know the case very well. But, Your Honor, we're in the District of Columbia. We're under Sousa. And Sousa said, look, under this standard, they said, look, we applied ensuing and said it's an ambiguous term, as applied. Here, Your Honor, I think it's pretty clear. If the water damage didn't result from the design defect, it wouldn't be an ensuing loss. And if it didn't result from dampness of atmosphere, it wouldn't be an ensuing loss. It is, in this case. Let's say the dampness of atmosphere didn't have anything to do with it. The exclusion doesn't apply. I don't have to go with the ensuing loss, but I have direct coverage for water damage. Your Honor, I think in this case, that was our first point. The Blaine case is another case that we've looked at. Now, obviously, it doesn't come from Maryland, doesn't come from D.C., but it's identical. It's on all fours. And what the court there focused on was this sort of curious language, dryness or dampness of atmosphere. And they said, well, what does that mean? And they just put dryness or dampness there. But they say of atmosphere. And the court then went on to make a distinction between atmosphere outside and atmosphere inside. I would submit, Your Honor, that the Souza case is different than Maryland, because we have a reasonable man standard or man on the street standard. And when I went through and I looked at the cases, there's a lot of cases on this ensuing loss clause from all over. But the cases in the states that apply a reasonable man standard or apply a man on the street standard all apply ensuing loss as resulting, just plain old resulting. And they don't go into this complex, you know, it has to be ensuing from some other loss that's not excluded. The Roger Cleveland golf case, which is a California case, said, and they have a reasonable man on the street standard, said that moisture that comes up from a concrete slab and forms a mold on a rug is covered because it ensued from the dampness in atmosphere. Old Town Canoe, which is a main case, some canoes are put into a store. I see my time's run up, Your Honor. Do you have any further questions? Judge Rogers, any questions? No, thank you. Thank you, Your Honor. Thank you. And are you requesting time for rebuttal? Yes, Your Honor, I requested two minutes for rebuttal. We'll give you those two minutes. Good morning, Mr. Silverberg. Good morning, Your Honors.  This case boils down to atmosphere and dampness of atmosphere in an exclusion. The policy is an all-risk exclusion. It ensures all risks unless otherwise excluded. Judge Mehta got it right. Dampness of atmosphere is an exclusion in the policy. To do what appellants argue here basically eviscerates the exclusion. Your Honor's questions, I think, got to that point. And frankly, before there was litigation, before advocates got involved, the appellants, the parties, referred to it as condensation, dampness of atmosphere. This was not a hole in the roof where rain came in. If this was a hole in the roof where rain came in, if this was a plumbing pipe that broke where water caused damage, I wouldn't be here right now. What does the ensuing loss clause do? The ensuing... Yeah, you're saying there's an exclusion. Sure, but there's an exclusion to the exclusion. Sure, and well, there's an exception to the exclusion. You're exactly right. And there's a lot of case law on the exception to the exclusion. In the Bethany Beach case, the court deals with it, at least under Maryland law. The Jowett case, I would certainly refer, Your Honors, to Aetna v. Yates. The exception is not designed to swallow up the exclusion. And Your Honor's question earlier got to that point, and Judge Mehta got to that point, inextricably intertwined. But it's not. You can imagine all sorts of damage from humidity that don't involve water, including condensation. Well, condensation does indeed, I would submit, involves water. And it is inextricably intertwined here. But I can give an example to put some flesh on the bones of what... The ensuing loss clause, to me anyway, seems to apply by its terms. And your best argument is you can't apply it by its terms because it would eviscerate... Humidity and temperature clauses. Well, that is exactly right. And I would also note that the exclusion refers to paused by dampness of atmosphere, not dampness of atmosphere. And counsel talked about the policy covers water damage. Well, it does cover certain kinds of water damage. We've never run away from that. If you recall, I started this argument by saying it's a policy unless otherwise excluded. I thought it covered all water damage, unless otherwise excluded. And the exclusion is you're saying, well, water in the form of humidity excluded. But as Judge Cassis's question pointed out, there is damage that is caused by humidity in its atmospheric form, like the mold that forms on the outside shingles of my home. But this is not that. This is liquid water, as their brief pointed out. And so then the question is, even assuming that there's an exclusion for atmospheric humidity, and they make an argument that there's at least enough ambiguity that that's limited to outdoor atmosphere. Here they have indoor liquid water. So why isn't that either under ensuing loss or under the terms of the agreement or both? I would submit that when you consider dampness of atmosphere caused by dampness of atmosphere, that that is inextricably intertwined. Wait, dampness of atmosphere caused by dampness of atmosphere? No, no. Dampness of atmosphere in and of itself clearly connotes moisture, water. It's moisture in a particular form. Whereas water, at least read under preferendum in the insured's favor, is a liquid. Right. Well, so we have an exclusion that says dampness of atmosphere, anything caused by dampness of atmosphere. And I think that is the key here. So they are, quote. So dampness of atmosphere creates rust and the rust damaged some drain that was supposed to, or some, I don't know, lock that was supposed to keep my sheep in. And I mean, I think that I understand the peril to be the thing that directly itself causes the harm, not the thing that's up the causal chain. Right. Well, there's no. And the example you started to give, and I've been saying, I'd like to sort of give an example where the ensuing loss has life, but doesn't eviscerate the exclusion. So you sort of had your honor sort of proposed a chain of events. Let me give maybe even a simpler chain of events. You have an exclusion for corrosion. OK, a pipe corrodes, floods the premises. There you have a not otherwise exclude arguably and not otherwise exclude ensuing type of loss or some sort of chain of events that results in a collapse. Dry rot as you know, that that knocks out a beam and then an entire building collapsed. And if collapse is not otherwise excluded, I think that's an example. Here you have an exclusion that different. Well, I think it's very different because I because you are taking a really segregated type of peril collapse to perfectly otherwise undamaged property here. What happened was the moisture, the humidity, the dampness of atmosphere did what humidity dampness of atmosphere does. And it damaged through a version of water damage. I mean, clearly we can't sort of separate humidity and this notion of vapor. I mean, the the appellants were calling it condensation. They put in the vapor barrier. It went away. It was clearly clearly the purpose of this exclusion. It was clearly accomplished. And and if I could just, you know, Yates, Etna v. Yates, I think really deals with this issue where the court said plaintiffs put more weight on the last quoted clause, the ensuing loss clause, then it will bear the result of their construction would be that the clause intended to narrow the exclusions for rust, rot, mold or other fungi and dampness of atmosphere would very nearly destroy them. A court may not properly give the court clause such a unnatural effect unless the words compel. That was the Fifth Circuit and that dealt with dampness of atmospheres and others. But that that's my point. So I do think, you know, the ensuing loss is there for a reason to address covered perils. And this is not that scenario in the hypothetical, in your corrosion hypothetical. If I'm if I followed it correctly, the excluded peril, just the corrosion, it might cause some loss or I mean, it might cause a loss by causing a covered peril. Right. Which is it? The drain bursts or something. Exactly. Or which is covered. Right. Some sort of aggregable might cause some other kind of loss which would be excluded. Yes. I mean, this the words I just said describe this contract just as well. It's just that the causation is less dramatic. It's not like a fire, an earthquake. But well, I think, you know, well, you know, your Honour's words are less dramatic. My words would be inextricably intertwined, as were Judge Mehta's words, because when you look But why is that true if you have harms from dampness which don't involve water? I mean, it would it honestly would depend on the scenario. But here dampness and water, that is not a leap at all. And when you look at the cases that dealt with it, and certainly I mean, the Blaine decision, Judge Mehta and Pelley's went to what we thought was the better reasoned dissent, but even Yates, same thing. And I would just also add, if you look at because when we got the court's order to show cause, which put me into a tailspin Friday afternoon to look at the Sousa case, you know, one of the which is not just an observation, but it is cited by the United States District Court for the District of Columbia in the case of Sum Inc. versus Hanover Insurance Company. And it's a very similar case, where, again, the court goes through the ensuing loss and looks at that site. Oh, I'll give it to you. Yes. We dropped this on you. Apologize. Yeah, and I have to check it on the site. It's 2023. It was decided since East Cap, in fact, it cites East Cap, Westlaw 186-1066. Okay. And that is one where it involved a, you know, a similar type exclusion with faulty workmanship with ensuing loss. And again, the plaintiff, the insurance plaintiffs argued for, you know, trying to separate out the so-called ensuing loss, the crack, concrete and other members that were a direct result of the faulty workmanship. The court goes through Bethany, goes through Joe, Bethany Beach. And it also, the plaintiffs cited to the Sousa case, and the court said that argument does not withstand scrutiny, primarily because the defined defect exclusions and exceptions are not ambiguous. Do you see a meaningful distinction between the Maryland treatment that the Maryland federal courts have used and the treatment in Sousa? Sousa doesn't explicitly talk about. No, I. Inextricably intertwined. No, it doesn't. It's, you know, I read it and read it and read it. And I did not see a meaningful difference. And I, you know, frankly submit that this one, for the reasons largely stated by Judge Mada, largely noted by the Yates court, by the Aetna v. The Fifth Circuit, that dampness of atmosphere, it is not it's a bridge too far to then start calling soaked or, you know, moisture damage, water damage. Well, we can use the word water damage of insulation because of a lack of a vapor barrier. I think it's a bridge too far to say that, aha, now you have the exception because essentially the exclusion would bear no weight. And we'd really be swallowed up by the exception. Sorry, this is Judge Rogers. Let me just ask you, following up on Judge Pillard's question, in both cases, you could say, well, the court was looking to provisions of a policy that it was being argued were ambiguous. But you would, would you not see a factual distinction between the Souza case and this case, wouldn't you? Because there the policy read in a very different way. And the question was, as I recall, and you can correct me if I'm wrong, was the damage caused by an explosion or glass. And so the policy applied in one instance and didn't in another. Well, we don't have that situation here. The question is water. And everybody agrees there was water damage, as I understand it. And the question is, well, what do you call it? And the policy here says any water damage except as. And then I suppose your strongest argument is, well, the homeowner here, the policy holder referred to it as an exclusion. So that's certainly not the technical term that insurance policies use. But perhaps that was raised in the context of saying, well, there was no obligation under the policy to actually to put in the vapor recovery system. So all I was getting at is that when you read Souza, the district court there seems to be saying, unlike the Maryland court, that you can read this ensuing clause broadly where you have this ambiguity. Or maybe you can even strike the adverb and just say, well, you have an ambiguity. The ensuing loss clause takes on a different meaning. That's all I'm trying to understand here. I thought maybe that's what Judge Pillard's question was getting at when she said, well, is there any meaningful distinction? And even if we were to agree that there's no meaningful distinction in the sense of the phrase ensuing loss, there certainly is a difference in terms of the factual basis of the two cases. Is there not? I believe, if I'm understanding your Honor's question correctly, I believe that there's a very significant difference in where in the Souza case, the court had determined that subsidence or the sinking in the earth, they decided that that was long term and that's not what occurred here. So, you know, at that point, sort of got out from under the threshold issue on the exclusion here, there is no dispute that it was about the absence of a vapor barrier and that once the vapor barrier was installed, problem solved. And if a vapor barrier had existed, it would not have been this dampness of atmosphere issue, which, you know, caused the damage, which is the subject of this lawsuit. But even your argument that it was water, and you're saying it was atmospheric water, not the water that the plaintiff is arguing, even though the clause your client has is any water damage, very broadly stated. And certainly in the Souza case, the court was focusing on what was the cause in terms of, was it an explosion or was it this glass problem? So it seems to me that the factual basis for analyzing the meaning of the clause was different and to the extent Maryland law was being read as saying, well, you can't do that. There is a more generous reading. And I think your Honor, in your Honor's question, I think made an excellent point because what we are talking about here is atmospheric water. We're not talking about a hole in a roof where rain came in or where a pipe burst and caused damage. Why isn't it just like a pipe bursting and causing damage? It's a pipe bursting for an antecedent reason that might be corrosion and maybe the corrosion is excluded, but the ensuing loss provision, I'm inferring on the hypothetical, brings the water damage from the burst pipe back under coverage here to the extent that some amount of accessible humidity somewhere is what contributes to the ability of the water buildup. It's the lack of a vapor barrier and in fact, water in liquid form that causes the damage. Why is that not just like your pipe? Yes, I think your Honor, with respect that that essentially, which is not the way policies are to be read in Washington, D.C. or Maryland or virtually any other jurisdiction, it basically reads out the exclusion. When is the exclusion almost ever going to apply? I think one has to also consider the context and this is about ensuring structure, a building where most of the exposure to damage is going to be interior and I think for all those reasons, to read it so narrowly and to, what about this? What about that? It all involves water, clearly dampness of atmosphere. I mean, let's think about what was missing here, a vapor barrier. I mean, it was all about protecting from moisture, water. This was not about rain or a pipe burst. If I came in here with that argument, I would be sitting at the other table, I suspect. I don't know if your Honors have any other questions. Rogers. Thank you. Thank you, Mr. Silverberg. And we'll hear briefly from Mr. Brown on rebuttal. Thank you, very quickly. If the insurance company had wanted to use the words inextricably intertwined, they could have put it in there. They could have written it right into the policy, but instead they didn't. And what they told this insured was, if you have water from any source, any source, water, we're going to cover it. If we think there's an inextricably intertwined exception to the ensuing loss provision, you lose? I don't think so, your Honor, because this is not a case where the ensuing clause would eviscerate the exclusion. Let me explain to you why. In this case, humidity damage can, or dampness of atmosphere, can cause loss, can cause damage. Now, I will caution the Court that there are all sorts of policies out there. There are policies that exclude humidity. This one does not. There are policies that exclude condensation. This one does not. So reading other cases, you need to look to make sure that those aren't excluded causes. But in this case, cigars that go bad, okay, from high humidity and have to be destroyed, no water damage, humidity damage, dampness of atmosphere, floors that cup because of humidity but not because of water, are damaged from dampness of atmosphere. Warped woods on cabinets, cabinets, would be something that would be covered. Surface rust would be covered. And most importantly, electronics that fail to work because of dampness of atmosphere and corrosion within the electronic motherboards is also something that would be covered by dampness of humidity but not picked up by the ensuing loss clause. The reasonable man on the street would say, look. Well, I thought it wouldn't be if the electronics are indoors. You think it wouldn't even be covered by the exclusion because you think dampness of atmosphere is exterior. Well, Your Honor, this is an all-risk policy. So it covers all risk of loss unless it's excluded. Burdens on the insurance company to show clear exclusion, clear application. In this case, they haven't done that. If I have a TV that fails to work, I say I'm covered. I have a loss to my TV. They say dampness of atmosphere. Maybe they got something. Thank you, Your Honor. Thank you both. Case is submitted. Thank you.
judges: Pillard, Katsas, Rogers